UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

————————————————

CHRISTINE M.,

                    Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

————————————————

1:20-CV-01226-MJR
DECISION AND ORDER

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States
Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13).

        Plaintiff Christine M.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g)
and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social
Security ("Commissioner" or "defendant") denying her Disability Insurance Benefits
("DIB") and Supplemental Security Income Benefits ("SSI") under Titles II and XVI of the
Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons,
plaintiff's motion (Dkt. No. 11) is denied and defendant's motion (Dkt. No. 12) is granted.

## BACKGROUND[2]

        Plaintiff protectively filed applications for DIB and SSI on July 17, 2017 alleging
disability since September 15, 2013 due to (1) syncope, (2) migraines, (3) chronic
obstructive pulmonary disease ("COPD"), (4) myalgia & myositis, (5) chronic depressive

---

[1] In accordance with the District's November 18, 2020 Standing Order, plaintiff is identified by first name and last initial.

[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.

disorder, and (6) post-traumatic stress disorder ("PTSD"). (*See* Tr. 19, 41, 198).[3] Plaintiff's applications were initially denied on December 7, 2017. (Tr. 19; 105-06). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Stephen Cordovani on July 18, 2019. (Tr. 38-78). ALJ Cordovani heard testimony from plaintiff, who was represented by Laurie Tanner, a non-attorney representative, and Jill Pasculli, a vocational expert ("VE"). (*Id.*). On August 6, 2019, ALJ Cordovani issued a decision that plaintiff was not disabled under the Act. (Tr. 16-33). Plaintiff sought review by the Appeals Council and her request was denied. (Tr. 1-5). The ALJ's August 6, 2019 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

Born on December 19, 1968, plaintiff was 47 years old on the alleged disability onset date and 50 years old on the date of the hearing. (Tr. 175). Plaintiff is able to communicate in English, has at least a high school education, and previously worked as a bartender, kitchen helper, and machine operator. (Tr. 200).

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic

---

[3] References to "Tr." are to the administrative record in this case.

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is

4

not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.*

If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

ALJ Cordovani found that plaintiff met the insured status requirements of the Act through December 31, 2018. (Tr. 21). The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since January 6, 2016, the amended onset date of her alleged disability. (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: (1) vasovagal syncope of the mixed type; (2) cervicalgia occipital neuralgia; (3) myalgia; (4) migraines; and (5) chronic obstructive pulmonary disease. (Tr. 21-24). At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 24). Before proceeding to step four, the ALJ assessed that plaintiff had the following RFC:

> [T]he [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants; no extreme heat, cold, wetness or humidity; no climbing ladders, ropes or scaffolds; can occasionally stoop, kneel and crawl; no work around hazards such as unprotected heights, moving mechanical parts or flammable liquids; no operation of heavy machinery or heavy equipment and no driving.

(Tr. 25).

6

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Pasculli to conclude that plaintiff was unable to perform past relevant work given the limitations set forth in her residual functional capacity. (Tr. 32). The ALJ noted that if the plaintiff had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed. (Tr. 33). However, the ALJ assessed that plaintiff's ability to perform sedentary work was compromised by additional limitations. (*Id.*) Proceeding to step five, and after considering testimony from VE Pasculli in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as routing clerk, photocopy machine operator, and stock checker apparel. (*Id.*). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from June 6, 2016 through August 6, 2019, the date of the decision. (Tr. 26).

IV.    *Plaintiff's Challenges*

Plaintiff makes two arguments in support of her motion. Plaintiff contends that, in determining the residual functional capacity, the ALJ failed to properly account for plaintiff's migraine headaches. (Dkt. No. 11-1, pgs. 15-20). She also argues that the ALJ erred in finding that plaintiff's mental health impairments were non-severe at step two of the sequential process. (*Id.*, pgs. 20-24). The Court disagrees and finds that the ALJ's decision is supported by substantial evidence for the following reasons.[4]

---

[4] Initially, the Court notes that a new regulatory framework for evaluating medical opinions and other medical evidence applies to this case, as it was filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The revised regulations significantly alter how the agency considers medical opinions and prior administrative medical finding for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). The "treating source rule" is no longer in effect, and the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those

a. *Step Two Determination of Severity*

At step two of the analysis, the ALJ must determine whether the claimant has a medically determinable impairment, or a combination of impairments, that is severe, meaning that it limits his or her ability to do basic work activities, and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c). The severity determination is based solely on medical factors, not vocational factors, such as age, education, and past work experience. *Juarbe v. Astrue*, 10-CV-1557, 2011 U.S. Dist. LEXIS 116714, at *5 (D. Conn. Aug. 30, 2011) (citing 20 C.F.R. § 404.1520(c)). The Second Circuit cautions that the step two severity analysis is meant to be applied "only to screen out *de minimis* claims." *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Despite the "*de minimis*" standard, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Briggs v. Astrue*, 09-CV-73089, 2011 U.S. Dist. LEXIS 73098, at *9-10 (N.D.N.Y. Mar. 4, 2011) (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995). A finding of "not severe" should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work. *Rosario v. Apfel*, 97-CV-5759, 1999 U.S. Dist. LEXIS 5621, at *14 (E.D.N.Y. Mar. 19, 1999). The claimant bears the burden

---

from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (2017). Further, although the ALJ must articulate his or her consideration of all medical opinions, he or she is no longer mandated to follow particularized procedures for evaluation of opinions from treating sources (e.g., the requirement that ALJs must "give good reasons" for the weight given to a treating source opinion). *Compare* 20 C.F.R. § 404.1527(c) (2016) *with* 20 C.F.R. § 404.1520c(b) (2017). Instead, the ALJ is directed to focus on the persuasiveness of the medical opinion(s) and articulate how he or she considered the most important factors or supportability and consistency. 20 C.F.R. § 404.1520c(b). The ALJ may, but is not required to, explain his or her consideration of the remaining factors, i.e., relationship to the claimant, specialization, and other factors, unless he finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(3).

of demonstrating the severity of impairments. *Woodmancy v. Colvin*, 577 Fed. Appx. 72,

74 (2d Cir. 2014) (summary order). "Where the ALJ has made errors at step two, courts

in this Circuit have generally remanded for a renewed severity determination." *See Pierce*

*v. Astrue*, 946 F. Supp. 2d 296, 310 (W.D.N.Y. 2013).

Additional regulations govern the evaluation of mental impairments. *See* 20 C.F.R.

§ 404.1520a. At the second and third steps of the five-step framework, the ALJ must apply

a "special technique" to assess the severity of a claimant's mental impairments. *See*

*Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008). First, the ALJ must determine

whether the claimant has a medically determinable mental impairment. §

404.1520a(b)(1). If the claimant is found to have such an impairment, the ALJ must

assess the claimant's degree of limitation resulting from the mental impairment in four

broad functional areas identified in § 404.1520a(c)(3). The four functional areas are: (1)

understanding, remembering, or applying informant; (2) interacting with others; (3)

concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

*Sanders v. Comm'r of Soc. Sec.*, 18-CV-753, 2020 U.S. Dist. LEXIS 8646, at *10-11

(W.D.N.Y. Jan 17, 2020); § 404.1520a.[5] These areas are measure on a five-point scale

that ranges between "none," "mild," "moderate," "marked," and "extreme." §

404.1520a(c)(4). If the degree of limitation in each of the functional areas is rated as

"none" or "mild," the ALJ will generally conclude that the claimant's impairment(s) is not

severe, unless the evidence otherwise indicates that there is more than a minimal

---

[5] The "paragraph B" criteria were revised in 2017. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 FR 66138, 2016 WL 5341732 (Sept. 26, 2016). Therein, the Social Security Administration changed the language of § 404.1520a [and § 416.920a] from "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation" to "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Mulhieldin v. Comm'r of SSA*, CV-20-431, 2021 U.S. Dist. LEXIS 170082, at *14, n.3 (D. Ariz. July 30, 2021). The revised criteria are applicable here.

limitation in the claimant's ability to do basic work activities. § 404.1520a(d)(1); *see Kohler*, 546 F.3d at 266.

Here, the ALJ used the special technique prescribed by the regulations and reasonably considered the relevant medical evidence to properly conclude that plaintiff had no more than "mild" limitation in each of the four functional areas. (Tr. 21-24). Accordingly, he concluded that plaintiff's medically determinable mental impairments, namely generalized anxiety disorder, major depressive disorder, PTSD, cocaine dependence abuse in sustained remission, and alcohol dependence abuse in sustained remission were non-severe.

In reaching these conclusions, the ALJ relied in part on the reports of the psychiatric consultative examiner, Dr. Santarpia, and the state agency medical consultant, Dr. Bruni, who both found that plaintiff had "mild" impairment or no impairment in each of the paragraph B categories. (Tr. 740-45, 757-59). Dr. Bruni further opined that plaintiff's mental impairments were non-severe. The ALJ found Dr. Bruni's opinion well-supported by Dr. Santarpia's examination findings and consistent with the treatment records. *See Frye v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *see* 20 C.F.R. § 404.1527(c)(3) (supportability) and (c)(4) (consistency). The ALJ identified and discussed specific evidence in the record relevant to plaintiff's mental functioning. He provided considerable explanation for his conclusions about plaintiff's functional ability in each paragraph B category, including by reference to Dr. Santarpia's examination findings and plaintiff's own reports of mental and social functioning. The ALJ also noted

plaintiff's mental health treatment history and her providers of counseling and medication management, although such treatment records were not available to Dr. Santarpia at the time of examination.

Plaintiff argues that the evidence shows more than *de minimis* mental impairments. Plaintiff also argues that the opinions of Dr. Santarpia and Dr. Bruni are "not mirrored by later records, indicating Plaintiff did have limitations resulting from her mental impairments." More specifically, she points to an initial evaluation from BestSelf Behavioral Health on November 9, 2017 which reflects that she had a depressed mood, passive suicidal ideation, had agitated speech, and reported anger and frustration. (Tr. 926-32, 955). The BestSelf records also state that plaintiff was depressed and anxious on December 7, 2017, January 11, 2018, and August 9, 2018. (Tr. 961, 990, 1000). Additionally, plaintiff refers to treatment notes of Dr. Zhang (who treated plaintiff's syncopal episodes at Dent Neurologic Institute) to the effect that plaintiff's "severe" depression and anxiety may be one of the contributing factors for her neurologic complaints. (Tr. 1090-92) ("I believe her real problem is an underlying mood disorder with severe family history of alcoholism and herself having posttraumatic stress disorder as well as severe anxiety and depression which indicated neural hyperactivity in the central nervous system…").

Despite plaintiff's arguments, the record supports the ALJ's determination of mild or no limitations in plaintiff's ability to do basic work activities based on mental impairments. Amidst plaintiff's subjective reports of depression and anxiety, plaintiff's primary care provider, Physician Assistant Munro, observed normal mental status examinations, including alert cognition and full orientation, normal mood and affect,

articulate and fluent speech, and no signs of distress. (Tr. 459-61, 499, 533-34, 574, 1164). Further, as acknowledged in the ALJ's decision, the treatment notes from PA Munro and BestSelf document that the period in which plaintiff reported increased depression and anxiety were due to transient and situational stressors, including financial difficulties, homelessness and unstable housing, and relationship difficulties. They specifically note that plaintiff had increased symptoms because she could not afford her medications (Tr. 497); that she had increased anxiety and depression due to having recently lost her home (Tr. 533); that she showed frustration and anger due to unstable housing, transportation, and finances (Tr. 955, 958); that she had improved depression but increased anxiety due to financial concerns, a fight with her boyfriend, being threatened by a neighbor, and witnessing a crime (Tr. 996); and that she felt stressed about "her basic needs not being met" because of a plumbing problem in her house and her low income. (Tr. 1024). By comparison, there were numerous treatment notes reflecting plaintiff's improved depression and anxiety after she obtained stable housing and other stressors were relieved. (Tr. 993, 998, 1002, 1004, 1032, 1164). Within these notes, plaintiff reported reduced symptoms after "being busy and getting out of the house." She further reported that her mood stability, depression, anxiety, and irritability were better with medications, and that she was finding ways to manage situational stressors. (*Id.*). Deficits in mental health brought upon by situational stress are not necessarily disabling. *See Percy T. v. Comm'r of Soc. Sec.*, 20-CV-829, 2021 U.S. Dist. LEXIS 100481, at *10 (W.D.N.Y. May 27, 2021) (*citing Swiantek v. Comm'r of Soc. Sec.*, 588 Fed. Appx. 82, 83-84 (2d Cir. 2015) (finding that behaviors precipitated by situational factors rather than longitudinal manifestations of psychological disorders belied the

presence of totally disabling functional limitations). Here, although the record shows plaintiff experienced increased depression and anxiety at times, the stressors were largely episodic and/or situational and the ALJ was founded in his decision that they were not disabling. *See Denea v. Comm'r of Soc. Sec.*, 18-CV-779, 2020 U.S. Dist. LEXIS 35633, at *17-18 (W.D.N.Y. Mar. 2, 2020); *see also Gonzalez v. Comm'r of Soc. Sec.*, 07-CV-629, 2010 U.S. Dist. LEXIS 585, at *13 (N.D.N.Y. Jan. 5, 2010) (finding plaintiff's claims of a disabling mental condition incredible where the evidence "reflects that she described situational periods of stress arising from problems with her children, her extended family, and financial difficulties, rather than any underlying psychopathology.").

Moreover, plaintiff's subjective complaints alone are not a basis for a finding of disability in the absence of corroborating objective medical evidence. *Mauro v. Comm'r of SSA*, 746 Fed. Appx. 83, 84 (2d Cir. 2019). Here, the medical record demonstrates that plaintiff's impairments were non-severe. The treatment notes from her providers document normal mood, normal reasoning and speech, fair or good insight and judgment, goal-directed or reality-based thought process and content. (Tr. 461, 499, 534, 951, 998, 1000, 1164). They also indicate that plaintiff had consistently normal attention, concentration, and memory, alert cognition, average cognitive functioning and engagement. (Tr. 328, 931, 951, 990-91, 998, 1000, 1002-03, 1024, 1085). They also indicate that plaintiff was appropriately dressed, had good eye contact, and was pleasant and cooperative during visits. (Tr. 315, 328, 366, 429, 951, 990-91, 931, 998, 1000, 1002-03). Further, plaintiff's reports of daily living at the hearing and to her providers support the ALJ's findings. She testified that she socialized, went to the library, walked to the corner store frequently, walked for exercised, visited parks, watched full length movies,

lived alone, handled cooking, cleaning, and laundry, and managed her own money. (Tr. 61-69).

Here, plaintiff's activities of daily living, combined with the medical evidence of record, support the ALJ's determination that the plaintiff's symptoms of depression, anxiety, PTSD, and substance abuse disorder in sustained remission cause no more than mild limitations in her functional capacity and are not, therefore, severe. *See Thomas v. Comm'r of Soc. Sec.*, 18-CV-88, 2019 U.S. Dist. LEXIS 157255, at *14 (W.D.N.Y. Sept. 13, 2019) (affirming step two determination of "non-severe" mental impairments). Indeed, there are no functional assessments in the record that reflect anything more than mild limitations caused by plaintiff's mental impairments. *See Giambrione v. Colvin*, 15-CV-6023, 2015 U.S. Dist. LEXIS 158772, at *11-12(W.D.N.Y. Nov. 24, 2015 (substantial evidence supports ALJ's determination that plaintiff's depression was non-severe where mental status examinations were consistently unremarkable with the exception of a depressed or anxious mood and no functional limitations are noted in treatment notes).

The cases relied upon by plaintiff are inapposite. In *Moskeland v. Saul*, remand was required for step two error because the ALJ failed to credit, or provide good reasoning for his rejection of, the only two opinions of record which opined that plaintiff had both "moderate" and "moderate to marked" limitations in areas of mental functioning. *See* 19-CV-6592, 2020 U.S. Dist. LEXIS 196738 (W.D.N.Y. Oct. 22, 2020). Here, the opinions relied on by the ALJ indicated mild or no limitations, which is consistent with a finding of non-severe mental impairment. *Leman v. Colvin* is cited by plaintiff for the proposition that "mild" limitations in the paragraph B criteria are not incompatible with a finding of a severe impairment. *See* 14-CV-901, 2016 U.S. Dist. LEXIS 23954, at * (W.D.N.Y. Feb. 26, 2016).

There, however, the Court was addressing the ALJ's finding of mild limitations at step three of the framework. *Id.* at *12-13. Having already determined that plaintiff's mental impairments were severe at step two, the ALJ used the functional criteria to assess whether that plaintiff met a Listings-level impairment for a mental disorder. *Id.* This is not the case here and the holding is not instructive on these facts.

Plaintiff's argument that Dr. Santarpia and Dr. Bruni's opinions are stale because they had not reviewed records from BestSelf is without merit. Both opinions are consistent with the treatment records that were later provided. Moreover, plaintiff points to no evidence that demonstrates that her condition worsened in that time. *See Beckles v. Comm'r of Soc. Sec.*, 18-CV-321, 2019 U.S. Dist. LEXIS 148587, at *17 (W.D.N.Y. Aug. 30, 2019) (finding that opinion was not stale where plaintiff "does not point to any record evidence demonstrating that his condition deteriorated during the relevant period"). In fact, the treatment records reflect general improvement in plaintiff's symptoms after November 2017 based, in part, on medication. (Tr. 990, 1000).

Plaintiff has not met her step two burden to demonstrate that her mental impairments were severe.[6] Accordingly, the Court finds that substantial evidence supports the ALJ's determination that plaintiff's mental impairments were non-severe.

### b. *RFC Determination*

In deciding a disability claim, the ALJ must "evaluate every medical opinion he receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997)

---

[6] The Commissioner additionally argues that, even if plaintiff's mental impairments were severe, she has not shown that the impairments caused limitations not fully considered in the ALJ's decision. *See Stanton v. Astrue*, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010) (summary order) (errors by the ALJ at step two are harmless where the ALJ continues with the sequential analysis and considers the effects of those impairments beyond step two); *see also Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (summary order). As the Court has found that substantial evidence supports the ALJ's step two conclusions, the Court does not reach this alternative argument.

(citing 20 C.F.R. § 404.1527(d)). In addition, the Commissioner will consider a claimant's contentions about pain or other symptoms, but these factors alone will not establish disability. *Id.* (citing § 404.1529(a)). Although an ALJ's conclusions may not "perfectly correspond" with any of the opinions of medical sources cited in his decision, he is entitled to weigh all of the evidence available to make findings that are consistent with the record as a whole. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order) (citing *Perales*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Pursuant to his statutory authority, an ALJ considers the medical and other evidence in the record in its totality to reach an RFC determination. *See Curry v. Comm'r of Soc. Sec.*, 855 Fed. Appx. 46, 48 n.3 (2d Cir. 2021) (summary order).

Here, the ALJ's RFC determination is supported by substantial evidence. The ALJ found that plaintiff was capable of simple, unskilled, light work with additional restrictions, including postural limitations, no exposure to respiratory irritants, no extreme temperatures, and no hazards such as driving, heavy machinery, or unprotected heights. (Tr. 25). He explained that he made such a determination based on plaintiff's testimony at the hearing, treatment records and other objective evidence of the medical record, as well as the expert medical opinions. (Tr. 25-32). He relied on the opinions of the consultative examiners and state agency medical consultants, Dr. Balderman, Dr. Poss, Dr. Santarpia, and Dr. Bruni, all of which he found "persuasive," except for Dr. Balderman,

whose opinion he only found to be "somewhat persuasive" for lack of sufficient explanation. (Tr. 31). The ALJ found two opinions offered by plaintiff's treating physician assistant, PA Munro, "unpersuasive" for lack of sufficient explanation, reference to factors unrelated to disability, and inconsistency with the examination findings and claimant's activities. (*Id.*). Plaintiff does not challenge the ALJ's determinations regarding these opinions.

Plaintiff challenges the RFC on the basis that the ALJ failed to adequately address or explain how the RFC limitations accommodate her migraines. She argues that the ALJ's failure to include migraine-related limitations in the RFC determination constitutes legal error because the record indicates she suffers from weekly migraines despite treatment. *See Cichocki v. Colvin*, 16-CV-784, 2018 U.S. Dist. LEXIS 208028, at *9 (W.D.N.Y. Dec. 10, 2018) (remanding where, despite improvement, plaintiff reported 2-3 migraines per week, the impact of which was not reflected in the RFC). She further submits that, as the ALJ identified migraines as a severe impairment, he was required to account for functional limitations caused by them. *See Makelke v. Comm'r of Soc. Sec.*, 16-CV-977, 2018 U.S. Dist. LEXIS 147278, at *12-13 (W.D.N.Y. Aug. 27, 2018) (remanding where ALJ provided no explanation "for how plaintiff's migraine condition – which occurred at least one or twice a week and resulted in debilitating symptoms including vomiting – would not limit her ability to work or warrant a functional limitation in her RFC."); *Ortiz v. Comm'r of Soc. Sec.*, 19-CV-538, 2020 U.S. Dist. LEXIS 179547, at *23-24 (W.D.N.Y. Sept. 29, 2020) (finding that the ALJ's failure to link postural and environmental limitations in the RFC to plaintiff's migraines prevented meaningful review by the court). The Court disagrees based on the facts at hand.

Here, the ALJ's consideration of evidence of plaintiff's migraine condition is abundantly clear. He discussed the medical records, opinions, and plaintiff's subjective complaints related to migraines at length and in relation to her functioning. (Tr. 25-31). He engaged in a thorough and detailed review of plaintiff's migraine diagnosis, symptoms, and treatment. This discussion included reports from plaintiff's treatment providers at DENT Neurologic reflecting plaintiff's diagnosis with migraine with aura and without status migrainous, not intractable. (Tr. 26, 29). It noted plaintiff's diagnostic studies (Tr. 26, 29, 30) and examinations (Tr. 26-27, 29). It reflects the ALJ's consideration of the efficacy of plaintiff's various treatments, including medications (daily and rescue therapy), regular trigger point injections, and a nerve block. (Tr. 26, 27, 29). The ALJ observed that plaintiff reported improved migraine with use of medication. (*Id.*). He further noted that plaintiff reported that her migraines were "stabilized" by the trigger point injections. (Tr. 26). The ALJ considered and discussed periods of worsening migraines but he referred to evidence of overall improvement in plaintiff's headache symptoms from 2016 through 2019. In September 2016, plaintiff reported 1-2 headaches per week and improved symptoms. (Tr. 26). In February and July 2017, plaintiff reported good results from treatment; that "her headaches are well managed with regular trigger point injections as well as [medications]." (Tr. 27). The record reflects a gap in plaintiff's treatment at DENT until December 2017, which the ALJ noted was during a period of homelessness. (Tr. 28-29). The ALJ did not make an inference against plaintiff in this regard, and in fact, considered plaintiff's resumption of treatment and her acknowledgment of the effectiveness of the regular trigger point injections. The ALJ went on to address plaintiff's continued treatment from early 2018 to June 2019, wherein she reported improved

headaches (on average 4-6 migraines per month). (Tr. 29). These recent records were considered against plaintiff's testimony that she still suffered 8-10 migraines per month, which could last for days or hours and caused pain. (Tr. 26, 54-57). Finally, the ALJ observed that plaintiff testified to various activities of daily living, none of which she reported being affected by migraines. (Tr. 30).

Although plaintiff argues that the evidence warranted additional RFC restrictions for migraines, she has not supported her conclusion with reference to any evidence that the ALJ overlooked or improperly discredited. *See Reynolds v. Colvin*, 570 Fed. Appx. 45, 47 (2d Cir. 2014) (summary order) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018) (explaining plaintiff's duty to prove a more restrictive RFC). Indeed, the ALJ's reliance on the evidence discussed, his reconciling of conflicting evidence, and his consideration of the expert opinions is wholly appropriate. Plaintiff's challenges are based on disagreement with the ALJ's weighing of the evidence in the record. However, such a challenge does not warrant reversal of the ALJ's decision. *See Krull v. Colvin*, 669 Fed. Appx. 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (holding that the ALJ's decision must be upheld, even if substantial evidence supports both the ALJ's decision and the plaintiff's position).

In sum, the Court finds that the ALJ's decision was based on proper application of the law and is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      January 12, 2022
            Buffalo, New York

                                    _____
                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge